(No. 20123.—)
THE OMAHA PACKING COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(MILISAV CHUK,
Admr., Defendant in Error.)

*Opinion filed June 20, 1930.*

THOMAS M. COEN, and JOHN R. KITCH, for plaintiff in error.

NELSON, WILSON & FITHIAN, and BERTRAM H. MONTGOMERY, (JAMES A. DALEY, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Svetozar Cuk was born in Sarajevo, in Bosnia, and resided there with his parents until 1912 or 1913, when he emigrated to the United States, being then about sixteen years old. His brother, Milisav, had preceded him and was living in Chicago. After coming to Chicago Svetozar was known as Samuel Chuk. He was employed by the Omaha Packing Company, the plaintiff in error, and on November 18, 1916, in the course of his employment he received an injury arising out of it, from the effects of which he died on November 28. Milisav was appointed administrator of his estate, and on May 18, 1917, filed an application with the Industrial Commission for compensation under the Workmen's Compensation act. There was a hearing before the arbitrator, who rendered his decision denying compensation. Upon a review by the commission an award was made in favor of Simana Chuk, the mother of the deceased. The employer sued out a writ of *certiorari* from the circuit court of Cook county, which entered an order quashing the writ of *certiorari* and confirming the decision of the Industrial Commission. Upon the petition of the Omaha Packing Company a writ of error was allowed to review the judgment of the circuit court.

The only reason assigned for the reversal of the judgment is that there is no competent evidence in the record to show that the deceased contributed to the support of his mother within four years previous to the time of his injury.

The only evidence offered on this question is contained in the deposition of the mother, with the exhibits attached, and the testimony of Jovan Mijanovich and Milica Mijanovich. From the deposition of Simana Cuk taken under a *dedimus* issued by the Industrial Commission before the judge of the Royal District Court of Sarajevo, Bosnia, Kingdom of the Serbs, Croats and Slovenes, it appears that she was married to Peta Cuk in 1887; that they had two sons, Milisav and Svetozar, and two daughters, Ljubica and Dragica; that Svetozar left Bosnia either at the end of 1912 or in the beginning of 1913 to go to America at the invitation of his brother, Milisav; that between November 28, 1912, and November 12, 1916, he was sending his mother money, but she did not know how much all together. He was sending it by checks which he inclosed with the letters and also through friends who were returning from America. While he was in Bosnia he lived with his parents and worked in the grocery of his father at Sarajevo. While he was in America he sent an amount of dollars—how much the witness did not remember—through one Petkovic, of Nevesinge, and also sent money in checks, though she could not remember the amount. Attached to the depositions are exhibits "A," "B" and "C," the first being a letter addressed to Mr. and Mrs. Peter Chuk, Sarajevo, Bosnia, from the Employees' Benefit Association of Swift & Co., informing them that their son had died November 28, 1916, and requesting them to appear before a notary public and sign a claim for death benefit, which was inclosed with the letter, and deposit it with a bank, to be sent to a Chicago bank for collection. The second was a letter from Svetozar dated November 8, 1915, addressed, "Dear and beloved mother;" and the third a letter dated "Detroit, Mich., Nov. 8, 1915," addressed, "Dear mother," and signed, "Svetozar and Milisav." She returned the checks because the Austrian authorities would not cash them, as they requested her to subscribe

to war loans for that amount. Svetozar once sent twenty-seven kronen, mentioned in exhibit "B." The post-master would not deliver it as it was addressed "Chuk" instead of "Cuk," and she then wrote to Svetozar not to send any more money during the war. Svetozar wrote many letters, but those letters were destroyed in the demonstrations of 1914; also during the war many letters were kept by the censor, and for some time it was forbidden to write from the Central States. One letter written by Svetozar was retained at the post-office. She did not know whether there was any money or check in it or not. On November 28, 1916, she was residing in Sarajevo. Her family consisted of herself, her husband, Peta, and her two daughters, Dragica and Ljubica. During the war battles were not fought in Sarajevo but it was evacuated in 1915, and she lived for six and a half months with her daughters in Bos Dubica. Battles were fought in the immediate vicinity of Sarajevo. She did not leave Sarajevo during the war, except for six and a half months in 1915. From 1914 to November 28, 1916, she and her husband were living in the most difficult financial conditions. During the anti-Servian demonstrations in 1914 their business was destroyed, all wine and brandy poured out and the rest of the inventory demolished, and their house was robbed. She had no receipts for any amount, because the Austrian authorities at that time would not give her money until she subscribed to the war loans. The money which was sent by Svetozar had to be used for their support. In the spring of 1914 her husband, who had had a grocery at Sarajevo, left that business and opened an inn in Aleksandrova ulica, which she was holding in 1925, when her deposition was taken. Her husband maintained a home only until 1914, when he was taken ill and did not leave his bed until his death, in April, 1917. Her daughters lived in the same house with her but did not contribute to the maintenance of the home because they were minors and went to school.

The letter, exhibit "B," after the date reads as follows:

"*Dear and beloved Mother*—I have received your letter, for which I am thanking you nicely that you are thinking of us. As to what you are writing that you wrote us several times before, I have received every letter, but please forgive me that I did not answer you, as I expected and all the time have hoped that there is going to be made peace and that I shall be able to come home to see you. I would even now like to come to you, but it is impossible to reach you. I would like to be with you and bear everything with you together, good as well as bad. The money I have sent you and you did not get, I am sorry that it was lost, but am sending you again 27 kronen, and if you are going to get this, please write me and I shall send you next time more.

"Now, accept greetings from your son, you, father, and the sisters.                                             SVETOZAR CHUK,
                  2421 Clybourn Avenue, Chicago, Ill."

The letter contained a registration receipt, as follows:

"*No. 2065992 Nov. 3, 1915.*

"Received from Svetozar Chuk at 2421 Clybourn

Five . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Dollars
For (foreign currency) . . . . . . . . . . . . . . . . . . . . . . .Kn 27
To be remitted to . . . . . . . . . . . . . . . . . . . . . .Simana Chuk
Residence, . . . . . . . . . . . . . . . . . . . . . . .iselgena is sarajeva
                                                      Bos Dubica
                                                      Per P."

Exhibit "C" reads as follows:

"DETROIT, MICH., *Nov. 8, 1915.*

"*Dear Mother*—The letter you wrote us in September we have received only in these days. We were very sorry when we have been informed what has happened to you. You are also writing that you did not get the money which we have sent you in July last year. That money was taken from the State, as in these fateful days one has to count with every cent. * * *

                                              SVETOZAR and MILISAV."

Jovan Mijanovich testified that he knew Milisav, who lived with him; that he lent Milisav $50 at his request, to send to his mother and father before the beginning of the war, and went with Milisav to a drug store, where Milisav bought a money order and sent it to his father and mother. Mijanovich was with Milisav when he put the letter in the

box, with the money order in the letter. Svetozar and Jovan boarded at the house of Milica Mijanovich, who was Jovan's cousin, and Jovan lent Svetozar money at her house and saw him write a letter after he lent him the money. He had given Svetozar money before. He paid Svetozar's board many times and Svetozar owed him $50 when he died. He saw Svetozar write letters many times. He did not read the letters. He did not know what he said in them. He saw the letter when he mailed it at the post-office. The letter on the outside said, "Mr. Peter Chuk," and that is all it said.

Milica Mijanovich stated that she knew Svetozar. His mother was her husband's sister. He boarded with her in 1914. He lived with her about one and a half years but moved away about four or five months before he died. She knew Jovan, who was also boarding with her. She was present at the time of the $50 transaction. Svetozar asked Jovan for $50. Jovan said, sure, he would let him have $50. Svetozar sat down and wrote a letter to his mother. "The first two or three lines were like you usually write a letter— 'Dear Father and Mother.' He took the money from Jovan. Jovan went with him to the drug store. I don't know what they did outside. There is a postal sub-station at Fullerton and Clybourn." Jovan paid money for Svetozar to her. She could not tell how many times. Svetozar was a young boy—could not get a job. He was hard up. He did not work steady very much. He often had a hard time getting work. She did not know how many times Jovan paid his board, but she knew many.

The accident which was the cause of Svetozar's death having occurred in November, 1916, the liability of the employer was governed by paragraph (b) of section 7 of the Workmen's Compensation act of 1913 as amended in 1915, (Laws of 1915, p. 401,) which declares that the amount of compensation for an injury resulting in death shall be, "If no amount is payable under paragraph (a) of this section and

the employee leaves any widow, child, parent, grandparent or other lineal heir, to whose support he had contributed within four years previous to the time of his injury, a sum equal to four times the average annual earnings of the employee," etc. This section does not require that the surviving parent shall be dependent upon the deceased. It is sufficient if the deceased leaves a parent to whose support he has contributed within four years previous to the time of his injury. It is not necessary that the contributions be given with any regularity, that they be necessary to the support of the parent or other relative named, or that there be any legal liability for support. (*Commonwealth Edison Co.* v. *Industrial Board,* 277 Ill. 74; *Peabody Coal Co.* v. *Industrial Com.* 289 id. 330; *Humphrey* v. *Industrial Com.* 285 id. 372; *Mallers* v. *Industrial Board,* 281 id. 418; *Mechanics Furniture Co.* v. *Industrial Board,* id. 530; *Peabody Coal Co.* v. *Industrial Board.* id. 579.) The case, therefore, is reduced to the question whether the evidence shows any contribution by Svetozar during the four years before his injury, to his mother's support.

The abstract of pages 36 to 43 of the record is as follows: "Notice of application to quash the *dedimus* and return thereon and to strike certain questions and answers contained therein. Notice of hearing on motion to suppress *dedimus*. Order of Industrial Commission denying motion to suppress *dedimus* and depositions returned pursuant thereto." What reasons were given for quashing the *dedimus,* or what questions and answers were desired to be stricken, and why, does not appear. On the hearing before the commission counsel for the plaintiff in error objected to the introduction of the deposition and of the exhibits attached to it, and objected to interrogatories 4, 6, 7, 8, 11, 13, 14, 15, 16, 22 and 33 and the answers thereto, and to the answers to cross-interrogatories 10, 11, 12 and 13. The record shows no specific reason for those objections, and the objections must therefore be regarded as general, only.

The objections to the interrogatories were for the most part merely to the form of the question, as, for instance, direct interrogatory No. 11 was, "Please state whether or not your son, Svetozar Cukovic, alias Samuel Chuck, sent any money to you from November 28, 1912, to November 28, 1916. If so, please state the amount the said son sent you during this period." The answer was: "Late Svetozar was sending me money, but I do not know how much all together. He was sending money by checks which he enclosed with the letters, but he sent me money also through friends who were returning from America. I cannot state the amount he sent me during that time." The argument of the plaintiff in error is: "This question, the manner in which it is framed, and the fact that it calls for an answer derived from facts outside of the personal knowledge of the deponent, is exceedingly objectionable and extremely harmful. As appears later in the deposition, this answer is based on hearsay. It later appears in the deposition that Samuel told her he was sending money, but such money she did not receive. The statement that 'he sent me money also through friends who were returning from America' is likewise based on hearsay and cannot be considered competent evidence in this case." This argument is not valid in support of the general objection. Even if a valid objection to the form of the question, it should have been specifically pointed out to give the claimant the opportunity, if he deemed it necessary, to take the deposition over, correcting the error in the form of the question.

Direct interrogatory 13 was, "During the period November 28, 1912, up to the time said Svetozar Cukovic, alias Samuel Chuk, emigrated to America, did Svetozar Chuk, alias Samuel Chuk, contribute to the support of yourself and your husband, Peter Chuk? If so, what amount of money did he contribute?" The answer was: "During his sojourn in America late Svetozar sent me an amount of dollars,—I do not remember how much,—through one Pet-

kovic, of Nevenrije. I do not know where is that Petkovic living now. He sent me also money in checks, but as I told before, I do not remember the amount." The argument in support of this question is: "This question, it is plainly seen, is objectionable for the reason that it calls for a legal conclusion of the witness. We submit that whether or not Samuel Chuk contributed to the support of the deponent and her husband, Peter Chuk, is a combined question of law and fact, to be determined from the actions of the parties." What has been said about interrogatory 11 applies also to this interrogatory.

Interrogatory 33, "For whose support were these contributions made?" was answered, "The money which was sent by late Svetozar had to be used for our support." The argument in support of this objection is: "This question, in addition to being leading, calls for a legal conclusion of the witness, and the answer cannot be classified except as such." If the question was leading and otherwise objectionable in form the objection should have been pointed out. The answer was responsive to the question.

Cross-interrogatory 10, "Did you receive any money from your said son, Svetozar, also known as Samuel Chuk, between November 28, 1912, and November 28, 1916?" was answered, "In the period from November 28, 1912, to November 28, 1916, I have received from late Svetozar only twenty dollars, which he sent through one Petkovic, of Nevenrije." The argument in regard to this interrogatory and answer is: "We submit that the entire answer should be stricken, but the answer and question itself, while we think it cannot be considered as evidence in this case, nevertheless is illuminating, for the reason that when the really pertinent and relevant question, 'What did you receive?' was asked, it appears that she did not receive any of the money which she had been talking about in the direct interrogatories which Svetozar sent to her." Cross-interrogatory 11, "If your answer to question 10 is 'yes,' state

the form in which this money was received, whether through the bank or in the form of cash," and the answer was: "That amount of twenty dollars I have received in cash money. It was brought to me by some Petkovic, of Nevenrije, whose present residence I do not know," and it is said that this answer is based on hearsay. Cross-interrogatory 12 was, "If your answer to question 10 is 'yes,' please state whether these remittances were in payment for money owing to you or your husband, Peter Chuk," and the answer was, "The said money was sent by late Svetozar for my support, because he knew that we were living in great misery." The answer to cross-interrogatory 11 is not necessarily based on hearsay. It is a positive statement that she received $20 from Petkovic. She was receiving letters from her son, according to her testimony, and she might have been expecting Petkovic by reason of having been advised of his coming by her son and identified him by reason of the information so conveyed to her, and such information was not hearsay. The answer to the twelfth cross-interrogatory, it is said, plainly requires a "yes" or "no" answer, and the objection made to it is that it is not responsive to the question. It was sufficiently responsive to the question. The answer "no" would not have been a more complete answer, and while the further statement that it was sent by Svetozar for her support because he knew they were living in great misery was not necessary to the answer, it was material to the investigation.

Interrogatory 17, and the answer, were not objected to, though counsel for the plaintiff in error say in their brief, "It is interesting to note what the widow has further to say concerning letters and sums mentioned therein by the deceased." The interrogatory was: "If you have any letters from your said son, please hand them to the official taking your deposition, to be attached to this deposition and marked, respectively, Applicant's exhibits 'D,' 'E,' 'F,' etc., and state when, where and how you received the same," and

the answer was: "I have returned back the mentioned letters, because the Austrian authorities would not cash them, as the said authorities requested me to subscribe the war loans for that amount. Late Svetozar sent me once twenty-seven kronen, which are mentioned on the letter, but the postmaster would not deliver it to us as it was addressed 'Chuk' [English] instead of 'Cuk.' The day after it I received the letter enclosed under 'A,' but the money was already returned to America. I wrote then to late Svetozar not to send me any more money during the war." Counsel say: "This, it appears, is the twenty-seven kronen mentioned in the answer to direct interrogatory 15, which answer we have already discussed and which we contend is incompetent." These twenty-seven kronen are no doubt the sum to which Svetozar referred in his letter of November 8, 1915, in which he also enclosed a registration receipt for another remittance of the same amount.

The testimony of Jovan Mijanovich and Milica Mijanovich, while involved in some confusion, at least indicates that both Milisav and Svetozar were making an effort to send money to their mother in Sarajevo, and the deposition of the mother, together with the exhibits, indicates that they were making continual efforts to do so through mails as well as by means of persons returning to Bosnia from America. Their efforts were for the most part unsuccessful, but we cannot reject the testimony of the mother in regard to the $20 which she testifies she received from Petkovic. An attempt to send money as a contribution to support which did not reach the person for whom it was intended cannot be called a contribution to support, but the finding of the Industrial Commission that the deceased left surviving him his mother, to whom he had contributed for her support within a period of four years before the injury and death, is fairly supported by the evidence, and the judgment of the circuit court confirming its award is affirmed.

*Judgment affirmed.*